HARRIS, Judge.
Appellant was convicted of possessing marijuana for personal use only and the jury assessed a fine of $1,000.00 against her. As additional punishment the Court sentenced her to a term of six months in the Covington County Jail. At arraignment with retained counsel present she pleaded not guilty. After conviction and sentence she gave notice of appeal. She was found to be indigent and was furnished a free transcript. Trial counsel was appointed to represent her on appeal.
Deputy Sheriff George Szpek first testified for the State. He testified that on December 7, 1975, he went to Mrs. Brown’s trailer in Babbie in response to a call from Chief Deputy Sheriff Don Harrell to bring a warrant for a Patsy Quinlan, who Deputy Harrell believed might be in the trailer. Deputy Harold Easley was riding with Szpek and the two of them met Deputy Harrell at the trailer at about the same time. Szpek said that he and Easley got out of their car and went to the trailer, and Harrell hollered to them that somebody had gone out the back door. Szpek said that he went to the door and Mrs. Brown came to the door and he told Mrs. Brown his purpose for being there, that he had a warrant for Patsy Quinlan, and wanted to know if she was there, and that Mrs. Brown said no. Szpek asked Mrs. Brown if he could look in the house and Mrs. Brown said he could. Deputy Easley went around to the back of the trailer and Szpek went into the living room through the front door. Inside were Mrs. Brown, Sheila Woodham, Lamar Joye, Janet Barnes and Joey Barnes. Joey was standing by the end of the couch in the hallway at the back of the house trailer. There is a back door to the trailer. You go to the left to the back door, and Joey Barnes was standing at the entrance of the hallway to the back door. Szpek made a *23 search of the trailer and found no one else there. He talked to Mrs. Brown, Joey and possibly to Janet. He then went out the back door of the trailer where Don Harrell was standing. He went outside and Don pointed to a bag.
Appellant objected to the State’s proving what was in the bag. Out of the presence of the jury it was developed on voir dire examination that the deputies had a warrant for one Patsy Quinlan which was produced in Court at that time. This warrant is set out at R. 157-165. Deputy Szpek said that they had no other papers other than the warrant and associated papers from Georgia and that they had no Alabama warrant of any kind: Defendant renewed her objection that the officers went there without a legal warrant for the arrest of Patsy Quinlan and that any search and seizure that came about while on the premises was unlawful. The Court overruled the objection. Still out of the presence of the jury, Deputy Szpek further testified that Deputy Harrell pointed out a small paper bag lying under a bush with a velveteen pocketbook lying on the top of the bag. It was six to ten feet from the back door. Defendant renewed her objection and moved to exclude what Deputy Szpek found or saw and the Court overruled. Deputy Szpek picked up the items. The ground’s condition was damp and cold. The bag and the purse were dry, furry, and warm. Deputy Szpek took the items inside and kept them in his possession until he delivered them to the Enterprise lab. He kept them in the trunk of his car and took them to the jail and locked them up in the evidence room. He later removed them and took them to Enterprise to the lab and turned them over to Mrs. Hazel Killett.
While out back of the trailer, Janet and Joey Barnes came outside. Out of the presence of the jury Deputy Szpek further testified that he picked the stuff up and Janet said, “That purse is mine,” and Joey hollered, “That stuff is all mine, leave her out of it.” Defendant objected to that and the Court overruled. Deputy Harrell then read both of them their rights which were from a standard Miranda card. They acknowledged that they knew their rights. They all went back inside then and dumped the stuff on the coffee table and inventoried it and then sealed it up, put it in the trunk of the car. Defendant renewed her objection as to. the finding of the various items.
Back before the jury Mr. Szpek again testified to what Joey and Janet said and the appellant again objected and the Court again overruled. He again related about reading the rights to them. He again related about taking the articles and locking them up and taking them back to the jail.
On cross-examination he said that he did not know if Janet Barnes lived in the trailer in question or not, that it was some time after 10:00 p. m. and that it was dark when they went there.
The Deputy Howard Easley testified for the State. He related the same general information about going to the trailer as did Deputy Szpek. He stated that he went around behind the trailer when they first arrived but did not see anyone back there. He then said that he came around to the front and went through the front door inside with Deputy Szpek and that Mrs. Brown, Janet Barnes, Joey Barnes, Miss Woodham and Mr. Joye were inside. He testified that he and Deputy Szpek made a preliminary search of the trailer to see if anyone else was there and then returned to the living room and asked questions of those there. He then testified that Joey Barnes asked him, “What am I charged with?” And he then read everybody their rights. That he read the standard Miranda card to them and asked them if they understood and they said that they did. He took their names, addresses, and phone numbers at that time.
On cross-examination Deputy Easley testified that he had a warrant from Georgia for Patsy Quinlan and that he searched the trailer for her but did not find her. He also testified that the deputies had no other papers of any kind for Patsy Quinlan other than the Georgia warrant. He testified that the deputies did not have a search *24 warrant nor an arrest warrant for any other person. He stated that none of the deputies had gone before any Alabama magistrate or judge to procure an Alabama warrant based on the Georgia papers. Over appellant’s objection the Georgia warrant was admitted into evidence.
The next witness for the State was Deputy Sheriff Don Harrell who testified that he knew Mable H. Brown and knew where she lived near or at the old Babbie schoolhouse in a trailer. He testified that he knew her two daughters, Patsy Quinlan and Janet Barnes; that Janet Barnes was the Defendant in this case and he identified her as sitting at the counsel table. He further testified that he went with the other two deputies on December 7, 1975, to .Mrs. Brown’s trailer in Babbie and that the occasion for going there was that he had previously been driving by there and saw a bunch of cars there and remembered that he had a Georgia warrant for Patsy Quinlan and decided that he would look for her there. He radioed Deputy Szpek and Eas-ley to meet him with the warrant and they did. He then related about arriving at the trailer and going in and around the trailer much as was related by Deputy Szpek and Easley earlier. Deputy Harrell stated that when Szpek knocked on the door a pair of legs ran down the back steps and then went back into the trailer and that he yelled and Deputy Easley ran around the trailer. He testified that the legs had on blue pants and a type of boot, not cowboy boots but similar to the engineer’s type boots, a brown boot with a kind of strap. He testified that he then began looking around outside the trailer. At this point the appellant objected on the ground that the State had not laid a predicate for any search and the Court overruled. Then Deputy Harrell said he looked back of the trailer near the steps and saw a brown bag with a billfold type purse lying on top of it; that he went inside and told Deputy Szpek and Mrs. Barnes and her husband went outside with them.
He noticed that the sack and purse were still warm. Over Defendant’s objection he quoted that Joey Barnes said, “Leave her out of it, that’s mine,” and Janet said, “No it’s not, that purse is mine.” He then testified that he read them their rights from a Miranda warning card. He then testified that they went back inside the trailer and identified and labeled items in the sack. He then testified that they carried them to the Covington County Jail in Andalusia and booked them for violating the Controlled Substances Act for possession of marijuana and paraphernalia.
On cross-examination Deputy Harrell said that they went to the trailer looking for Patsy Quinlan and had the Georgia warrant which was appellant’s Exhibit No. 1 previously referred to with them. He testified that he had no other papers relating to the matter and that if they had arrested Patsy Quinlan, he would have then obtained a fugitive warrant because he knew a felony had been committed. He said that he had not gone before any Alabama magistrate prior to December 7, 1975, because he had had no opportunity to carry the Georgia papers before an Alabama magistrate and that that night he had not had time to do so. He said that had he found Patsy Quinlan he would have arrested her and put her in jail and the next day he would have gone and gotten a fugitive warrant. He then sketched on a blackboard the layout at the trailer. He indicated on the sketch where the trailer was and the schoolhouse and the driveway where the cars were parked. He indicated other structures in the vicinity.
He again related seeing the two pairs of legs with blue pants and brown boots. He said that these legs and boots were not Janet’s, the appellant’s in this case. He further indicated the various things he saw at the scene by drawing them off on the blackboard.
On redirect examination by the State, Deputy Harrell stated that two other persons who were at the trailer, Shirley Wood-ham and James Joye, both admitted to him that they had smoked marijuana there before he got there that night. He further stated on recross-examination, that Janet *25 did not admit to him that she had smoked any marijuana.
The next witness was the appellant Janet Barnes called in rebuttal to the State’s evidence regarding the search and seizure of the alleged controlled substances. The appellant stated that on December 7,1975, she resided at her mother’s trailer in front of the old sehoolhouse. On cross-examination, she said she had been living there a week or two.
The State then called Deputy Szpek to rebut the testimony of the appellant on the question of where the appellant lived. This took place outside the presence of the jury. Szpek said that Janet and Joey said that they were just visiting Janet’s mother watching television.
Then the State further cross-examined the appellant on the same question.
Then the appellant renewed her objection to the offer of evidence of the substances alleged to be controlled substances found by the deputies behind the trailer of Mrs. Brown. The Court overruled the objection.
The next witness for the State was Melinda Long. She testified that she worked for the State of Alabama Department of Toxicology and Criminal Investigation in Enterprise, Alabama. She said that she had a B.S. degree in microbiology from the University of Alabama and had worked with the Department of Toxicology for two years and six months in training at Auburn. She testified that she had inorganic and organic chemistry, quantitative analysis, biochemistry. She testified that as a part of her training she made chemical analysis of substances to determine the contents of the same. She testified that she had had occasion to make chemical analysis of marijuana to determine the chemical content. She testified that she had had occasion to run a chemical analysis or other tests to determine the chemical content or make-up of certain pills, capsules and tablets.
She testified that in the latter part of December, 1975, she was delivered a packet by Deputy Szpek in reference to Janet Sue Barnes, that it was on December 8, at the Enterprise laboratory. She then catalogued the various items received. She examined the items and ran a chemical analysis or laboratory test to determine if they contained any controlled substances. At this point appellant objected that they had not proved the chain of evidence prior to the admission of the identification evidence by the lab expert. The Court sustained.
The State then questioned Melinda Long further. She said that Deputy George Szpek delivered that to the laboratory in Enterprise and that it had been in the lab’s custody until today (Court day). She testified that it was in the same condition now as it was when received by the lab and that the seal was still intact.
The State again asked her to tell the controlled substances she may have found among the substances seized. Appellant objected and the Court overruled. Appellant called the Court’s attention that Deputy Szpek had testified that he gave the substances to somebody named Killett rather than Miss Long and that they had not established the chain of evidence as to these substances. The Court still overruled and appellant excepted.
Then the State asked Miss Long who Hazel was and she replied that Hazel was her secretary and that it was part of her duties to receive incoming parcels and packages of mail. That the substances were turned over to her (Miss Long) there in the lab and they were sealed when she received them. She opened the package below the seal and ran the tests.
Appellant took the witness on voir dire examination. She said that she was not there when Deputy Szpek brought the material in the sack to the lab. She said that it was turned over to her by Hazel Killett. She said that she did not know what Hazel might have done with it while she had it. She said that she could tell that the sack had not been opened. She said that it appeared that it had not been opened. Appellant renewed her objection to the evidence and the Court sustained.
*26 The State then called Deputy Szpek to the stand who said that he sealed the material in a bag and took it away from the trailer of Mrs. Brown. Deputy Szpek also examined a bag in the courtroom and identified markings on the bag as being his initials. He testified that the bag he was examining in Court was the bag that he handed to the lady in the office in the Toxicology Lab in Enterprise. He testified that he put his initials over the seal, stapled it, folded it and then taped it and put his initials over the tape.
On cross-examination Deputy Szpek said that he could not remember if other people were present at the lab when he delivered it. He testified he did not know who got the bag after he delivered it to Mrs. Killett. He testified that he could not remember if Mrs. Killett cut it open to see what was inside the bag. He testified that he didn’t see who Mrs. Killett delivered it to after he handed it to her. He testified that he did not know who opened it. He testified that he could not remember if it was opened in her presence or not.
Then the State questioned Deputy Szpek further. He testified that he gave the bag to Mrs. Killett and told her to give it to the people who work in the lab.
Mrs. Melinda Long was recalled to the stand. She testified that Mrs. Killett was in charge of departmental distribution and her occupation was to receive mail items and packages and then turn them over to the lab technicians to run tests. She testified that Mrs. Killett gave her the bag which was produced in Court regarding Janet Barnes. She further testified that when Mrs. Killett gave the bag to her, it was sealed and that she examined it. She testified that the bag did not appear to have been molested in any way. She testified that it appeared to be still sealed. At this point the appellant again objected on the same grounds and the Court overruled.
The State elicited from Miss Long an itemized description of the items found in the sack to which appellant objected throughout and the Court overruled throughout. Miss Long said that the chemical element entity present was tetrahydro-cannabinol. She said this in regards to the marijuana she testified about.
On cross-examination she testified that she had refreshed her recollection from her report in the case and that throughout the report the spelling of the substances was “marihuana.”
On redirect examination, she testified that the marijuana she had testified about contained tetrahydrocannabinol.
The appellant orally moved to exclpde the State’s evidence and particularly the substances alleged to be controlled substances on the grounds that they were obtained as a result of an unlawful search and seizure of the premises and on the further grounds that the chain of evidence as to such substances was not established by the State and on the further grounds that the expert witness was not competent to give expert testimony as to the nature and identity of the substances. And on the further grounds that there had been no evidence to connect the appellant with the substances or to show constructive possession of the substance by the appellant or to show any guilty knowledge on her part. The Court denied the motion and appellant excepted. Then appellant filed a written motion to exclude the State’s evidence which is set out at R. 141-142. This was also denied.
The State having rested, the appellant took the stand as a witness. She testified that she was 20 years of age and that she was at the trailer of her mother together with her husband, Lamar Joye and Shirley Woodham on the occasion in December testified about. She testified that her husband was Joey Barnes and her mother’s name was Mable Brown. She testified that her mother resided in a mobile home in Babbie. She testified that the rough sketch on the blackboard was generally the way the layout was at Babbie. She testified that the deputies arrived at about 10:30 and that the four young people had been at the trailer since about 6:00 and that this was on *27 a Saturday night. She testified that Deputy Szpek and Easley did come in the trailer that night and that she was sitting on the couch in the living room when they came in. She testified that she had heard the testimony and saw the evidence that was presented in Court against her earlier. She testified that she had never seen the stuff (seized by the deputies) before that night. She testified that she did not know how it got to where it was found by the deputies. She testified that she had not put it out there. She testified that she did not know who put it out there. She testified that she did not know how it got there. She testified that she had not seen anyone else smoke any marijuana and did not know if anyone else had smoked any marijuana there that evening. That if they did smoke any marijuana there, it was beyond her knowing of it. She testified that the purse which had been introduced into evidence which was tan in color with suede finish was her purse. She testified that she did not know how it got out on the ground where the deputies testified that they found it. She testified that the last time she saw the purse was on Friday and that this was on Saturday when the deputies came. She did not recall where it was. She did not keep money in it and did not carry it with her everywhere she went. She testified that the last time she saw the purse was on Friday and that she did not know how the purse got out there where it was. She testified that she did not know whether or not there had been other people around the trailer there prior to that Saturday evening. That if there had been she did not know it. The last time she saw the purse before then was on Friday morning at work. She did not know when she last saw it on Friday. There is another trailer very close to where her mother’s trailer is and people live there and people come and go from there. There is also a house nearby and people live there and come and go from there. She testified that she did not know what was out there on the ground nor how it might have gotten there. The appellant testified that she did not put it there. The appellant testified that they arrested Joey and they arrested her. She testified that she remembered saying to the deputies, “That’s mine.” She testified that she was talking about the purse when she said that. She was not talking about the other stuff that she saw there. The deputies did not arrest Lamar Joye and Shirley Wood-ham.
On cross-examination she testified that the other folks had done nothing to be arrested for. She stated that she had not smoked any marijuana in the trailer there that night. She testified that Joey Barnes did not leave the trailer that night and she further testified describing the layout of the trailer. She testified that Joey did not grab up the sack of stuff and run out the back door and come right back in. She stated that she was living at her mother’s trailer. She testified that she either lost or misplaced her purse. She again testified that that was her purse and that she claimed it there on the back steps that night. At this point the appellant rested.
On rebuttal the State called Lamar Joye who testified that he was 27 years of age and lived at Route 8, Andalusia, and was a student at Lurleen B. Wallace State Jr. College. He testified he went to Mable Brown’s trailer on December 6 or 7 with Shirley Woodham and arrived around 8 o’clock, that Joey and Jan Barnes and Jan’s mother was there. He identified Janet Barnes, the appellant, as being there. He described the layout inside the trailer. He testified that he knew and recognized a marijuana cigarette when he saw it. He testified that he smoked a marijuana cigarette and it was passed around. He testified that it was passed around, from hand to hand and he believed that he saw Janet with it in her hand but that he didn’t know if she smoked it or not. He testified this was 30 minutes to an hour before the officers came and that he did not know what happened to the remains of that cigarette.
On cross-examination he testified that he was not arrested nor indicted by the Grand Jury and that he had not been promised *28 anything to testify in this case. He testified that he had been told he was not going to be prosecuted because he had done nothing.
As background information, appellant’s sister, Patsy Lee Quinlan, was indicted by a Grand Jury in Clayton County, Georgia, for violating Georgia’s Controlled Substances Act on May 2, 1975. She was arrested and released on bond. When her case was called for trial, she did not appear and a Bench Warrant was issued for her arrest. She could not be located in Georgia and it was thought she had fled from Georgia and taken refuge in Alabama.
The Warrant Officer of the Sheriff of Clayton County, Georgia, on November 12, 1975, wrote the following letter to the Sheriff of Covington County, Alabama:
“Hon. W. E. Harrell Sheriff Covington County Andalusia, Alabama 36420 Re: Patsy Lee Quinlan, W/F/DOB:
1/27/34 Our I.D. # 20398 Dear Sheriff:
I am enclosing certified copy of our indictment and Bench Warrant # 8-13884 (VGCSA), a felony on which we will extradite. Also enclosed is a photo of subject.
Please try to locate her at residence of her mother, Mrs. Mabel H. Brown, Rt. 3, Box 237-A, Andalusia, Alabama (205-493-3477).
If apprehended, please ascertain if she is willing to sign a waiver of extradition and if not, advise us so that we may have our D.A. start extradition proceedings for her return to Georgia.
Your cooperation in this matter, is appreciated.”
Attached to this letter was a copy of the following document under the Seal of the Clerk of the Superior Court of Clayton County:
“I, Joe B. Mundy, Clerk of Superior Court do hereby certify that the foregoing and attached 6 pages contain a true and correct copy of the Indictment, Bond forfeiture and Bench ^Warrant, in case ■# 8-13884, The State vs. Patsy Lee Quinlan, as same is of file and of record in this office.
Witness my official signature and seal this 12 day of Nov., 1975.
Joe B. Mundy Clerk of Court.”
The threshold question to be decided is whether or not the trial court erred in holding the Georgia “Bench Warrant” was valid and that the contraband found at Mrs. Brown’s trailer was properly admitted into evidence.
In Aldio v. State, 42 Ala.App. 653, 177 So.2d 107, we held that a Bench Warrant and indictments executed by officials in the State of Pennsylvania and not authenticated by the Executive Authority of that state would not support the arrest and extradition of appellant to that state to answer the crime charged against him.
Since the Bench Warrant in this case was not duly authenticated by the Executive authority of the State of Georgia it was a nullity and conferred no authority on the Sheriff’s Department of Covington County to make an arrest in this state. Had the official in the Sheriff’s Office complied with Title 15, Section 60, Code of Alabama 1940, we would not be confronted with this problem. That section provides as follows:
“Arrest prior to requisition. — Whenever any person within this state shall be charged on the oath of any credible person before any judge or other magistrate of this state with the commission of any crime in any other state, and except in cases arising under section 53 of this title, with having fled from justice; or whenever complaint shall have been made before any judge or other magistrate in this state setting forth on the affidavit of any credible person in another state that a crime has been committed in such other state and that the accused has been charged in such state with the commission of the crime, and except in cases arising under section 53 of this title, has fled from justice and is believed to have been found in this state, the judge or *29 magistrate shall issue a warrant directed to the sheriff of the county in which the oath or complaint is filed directing him to apprehend the person charged, wherever he may be found in this state, and bring him before the same or any other judge, court, or magistrate who may be convenient of access to the place where the arrest may be made, to answer the charge or complaint and affidavit; and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant. (1931, p. 559.)”
To hold that the alleged Bench Warrant in this case possessed legal efficacy we would be compelled to take judicial knowledge that the judge who signed this warrant was a duly constituted officer of the Superior Court of Clayton County, Georgia, and that his actions are entitled to full faith and credit under the constitution and laws of the United States. This we are not authorized to do.
The State contends that the “plain view” doctrine controls this case. We do not agree.
In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, the Supreme Court said:
“It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.”
In Jenkins v. State, 46 Ala.App. 719, 248 So.2d 758, this Court held: “The plain view doctrine requires that the officers be rightfully in the spot from which they view.”
In this case the officers seized the merchandise in question within the curtilage, which is entitled to the same protection as the home against search and seizure. United States v. Molkenbur, 8 Cir., 430 F.2d 563.
For the error in overruling the motion to exclude the evidence found by the officers, this case is reversed and remanded.
In the light of the conclusion we have reached we do not deem it necessary to treat the other issues raised on this appeal.
REVERSED AND REMANDED.
TYSON and BOOKOUT, JJ., concur.
DeCARLO, J., dissents with opinion.